UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In the Matter of:

Subpoena dated January 10, 2013 to
Randall S. Newman, P.C.

Case Number:

*Pending in the District Court
for the Central District of California
Case No. 11-cv-6358 (MMM)(CWx)*

13 MISC 00019

---

# MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO QUASH SUBPOENA

Respectfully submitted,

RANDALL S. NEWMAN, P.C.
Randall S. Newman, Esq. (RN7862)
37 Wall Street, PH D
New York, New York 10005
Tel: (212) 797-3737

On January 10, 2013, Defendant National Entertainment Collectibles Association, Inc. ("NECA") served a subpoena on Real Party in Interest Randall S. Newman, P.C. ("RSN PC"), counsel for plaintiff Zack Ward in the underlying litigation in the United States District Court for the Central District of California. Real Party in Interest RSN PC submits, pursuant to Federal Rule of Civil Procedure 45(c), this Memorandum in Support of its Motion to Quash Subpoena ("the Subpoena") served upon RSN PC. The Subpoena is attached as Exhibit G to the Declaration of Randall S. Newman dated January 24, 2013 ("Newman Decl.").

## INTRODUCTION

Real Party in Interest RSN PC moves to quash the Subpoena on the grounds that the Subpoena unfairly subjects RSN PC to an excessive, undue, and unnecessary burden by seeking documentation that is either entirely irrelevant to the remaining issues in the litigation or has already been produced voluntarily to Defendants. Defendants' true motive for the Subpoena appears to be petty vindictiveness in response to a reasonable subpoena request made by Plaintiff seeking Defendants' counsel's billing records, to which Defendants have responded, in part, with the instant unnecessary and completely disproportionate subpoena. Such conduct by Defendants has, unfortunately, permeated this action, and it must not be permitted to continue. Accordingly, Real Party in Interest RSN PC respectfully moves the Court to quash the Subpoena pursuant to Rule 45(c).

## FACTS

The underlying litigation stems from Defendants' attempt to profit from the unauthorized and unlawful use of Plaintiff Ward's image as the character "Scut Farkus" in the well-known film *A Christmas Story*.[1] Plaintiff Ward commenced the underlying action to recover damages for Defendants' unauthorized use of his photograph and likeness, to obtain royalties admittedly owed to him under an agreement granting Defendants limited rights to use his likeness to

---

[1] The underlying litigation is docketed as *Zack Ward v. National Entertainment Collectibles Association, Inc. and Joel Weinshanker*, No. 11-6358 MMM (CWx). A second related action is also pending in the United States District Court for the District of New Jersey, *Zack Ward v. National Entertainment Collectibles Association, Inc.; Joel Weinshanker; Edward P. Busichio; McCarter & English LLP*, No. 12-05078-FSH-PS.

produce a Scut Farkus action figure, and to prevent their unauthorized use of his image in the future. The grueling proceedings ultimately resulted in a confidential settlement agreement between the parties, in which Defendants stipulated that Plaintiff Ward was the prevailing party on his claims under Cal. Civ. Code § 3344 ("Section 3344") and 15 U.S.C. 1125(a) (the "Lanham Act"). Newman Decl., ¶¶ 3-4.

As the prevailing party under Section 3344 and the Lanham Act, Plaintiff moved on January 16, 2013, for an award of attorneys' fees under the fee-shifting provisions of Section 3344 and the Lanham Act. Newman Decl., Ex. A [ECF No. 207]. Under the terms of the confidential settlement agreement, the Motion for Attorney Fees was manually lodged in the United States District Court for the Central District of California with an accompanying application to file under seal. *Id.* In preparation for this motion, on January 7, 2013, Plaintiff issued a one-page subpoena to Defendants' current attorneys, Sheppard Mullin Hampton & Richter ("Sheppard Mullin"). Newman Decl., Ex. B. In two short requests, the subpoena seeks only the billing records detailing the lodestar calculations for Sheppard Mullin and for Defendants' prior counsel, McCarter & English. *Id.* at 1. Despite the subpoena having a return date of January 14, 2013, Defendants have objected to the subpoena and declined to produce any documents in response to the subpoena; and they have not sought judicial relief from the subpoena.[2]

Instead, on January 10, 2013, three days after Plaintiff served his limited subpoena on Sheppard Mullin, Defendants served this blunderbuss Subpoena upon RSN PC, and an identical subpoena on RSN PC's co-counsel, Wolf Haldenstein Adler Freeman & Herz LLP. The 16-page Subpoena includes 39 separate document requests that demand, *inter alia*, all documents pertaining to agreements between Plaintiff and RSN PC for the provision of legal services and

---

[2] On January 17, 2013, Plaintiff also issued and served a subpoena (with three requests for billing records) on McCarter & English, LLP, Defendants' prior attorneys when the litigation was pending in the District of New Jersey. Newman Decl., Ex. E. This subpoena is not returnable until January 25, 2013. On January 17, 2013, Plaintiff Ward also served a subpoena on Defendant NECA (with six requests for time and billing information) and this subpoena is also returnable on January 25, 2013. Newman Decl., Ex. F.

detailed billing records broken down by claim. In response to the Subpoena, RSN PC served NECA with its Objections to the Subpoena and the Plaintiff and RSN PC now file the instant motion to quash the Subpoena.

## ARGUMENT

### A. The Subpoena Should Be Quashed as Unduly Burdensome

Rule 45(c)(3)(A)(iv) provides that "[o]n timely motion, the issuing court must quash or modify a subpoena that . . . (iv) subjects a person to undue burden." The determination of whether a subpoena is unduly burdensome is "entrusted to the sound discretion of the court." *Fitch, Inc. v. UBS Painewebber, Inc*, 330 F.3d 104, 108 (2d Cir. 2003) (internal quotation marks omitted). A subpoena is unduly burdensome when it is "served for the purpose of annoying and harassment and not really for the purpose of getting information." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003); *Bulkmatic Transp. Co. v. Pappas*, No. 99-12070 (RMB)(JCF), 2001 U.S. Dist. LEXIS 6062, at *8-9 (S.D.N.Y. May 11, 2001) ("[A] purpose to harass a witness or a party by abuse of the court's process will not be countenanced") (*quoting United States v. International Business Machines, Corp.*, 83 F.R.D. 92, 94 (S.D.N.Y. 1979)). Moreover, a subpoena can be deemed unduly burdensome where it requests documentation that is irrelevant to the case or has already been provided to the party issuing the subpoena. *See Koch v. Pechota*, No. 10-9152, 2012 U.S. Dist. LEXIS 148153, at *6 (S.D.N.Y. Oct. 11, 2012) (undue burden factors include "relevance" and "the need of the party for the documents"); *Koch v. Greenberg*, No. 07-9600 (BSJ) (DF), 2009 U.S. Dist. LEXIS 61913, at *6 (S.D.N.Y. July 14, 2009) (subpoena should be limited that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient") (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) ("'evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party . . . and, in particular, requires the court to consider . . . the need of the party for the documents'") (quoting *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005)).

### 1. Plaintiff has Already Provided Defendants and the Court Information Sought by the Subpoena.

Defendants' Subpoena should first be quashed by the Court because it seeks documentation that Plaintiff has already voluntarily made available to Defendant by providing these documents as part of the Motion for Attorneys' Fees. *Pechota*, 2012 U.S. Dist. LEXIS 148153, at *6. The bulk of the Subpoena's whopping 39 requests seek Newman PC's billing records in the matter. *See* Newman Decl., Ex. G, RFPs 6-33. RFPs 34-37 further request documentation pertaining to communications between Plaintiff and RSN PC regarding charges and payments for RSN PC's work on the litigation. *Id.* at 15-16. But subsequent to the issuance of the Subpoena on January 10, 2013, Plaintiff filed his Motion for Attorney Fees on January 16, 2013.

The Declaration of Randall S. Newman In Support of Plaintiff's Motion for Attorney Fees ("Fee Declaration"), also manually lodged a report of the hours worked by RSN PC. Newman Decl., ¶ 25. These time records are used by RSN PC to prepare client billing statements. The Fee Declaration also indicated by hourly rate and the number of hours worked in order to create a lodestar report for the Court. *Id.*. In addition, the Fee Declaration also attached a breakdown of the time by task. *Id.* For example, in the course of the trial preparation, Defendants filed nine Motions in Limine and Plaintiff prepared a chart which broke down the total time for this task as well as the time for each individual attorney or paralegal who worked on the specific task.

Based on this highly detailed production as part of the Motion for Attorneys' Fees, the Defendants no longer has any "need . . . for the documents." *Moon*, 232 F.R.D. at 637; *see also Greenberg*, 2009 U.S. Dist. LEXIS 61913, at *6; *Oyarzo v. Tuolumne Fire Dist.*, No. 11-01271-LJO-DLB, 2012 U.S. Dist. LEXIS 122358, at *7 (E.D. Cal. Aug. 27, 2012) ("'When evaluating whether the burden of subpoena compliance is "undue," the court balances the burden imposed on the party subject to the subpoena by . . . the relevance of the information sought . . . and the

litigant's need for the information.'") (quoting *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 354 (D.D.C. 2011)).[3]

In light of this chronology, one might conclude that Defendants issued the Subpoena because the detailed billing information in the Motion for Attorney Fees was not yet available. However, the Defendants have not subsequently moved to withdraw or modify the Subpoena and, as detailed *infra*, prior conduct by Defendants leads to the conclusion that the chief purpose of the Subpoena is in fact to harass Plaintiff and Plaintiff's counsel.

### 2. Defendants Seek Documentation That is Irrelevant to Plaintiff's Fee Application

Apart from requesting documentation that already has been provided to Defendants in the Motion for Attorney Fees, the Subpoena further demands documentation that is irrelevant to the outstanding issues in the pending litigation. *Pechota*, 2012 U.S. Dist. LEXIS 148153, at *6. RFP's One through Four of the Subpoena request documentation relating to agreements between Plaintiff and RSN PC regarding RSN PC's provision of legal services to Plaintiff. Newman Decl., Ex. G at 4-5. This documentation has nothing to do with determining the pending Motion for Attorney Fees, in which the court must merely determine two issues: (1) whether Plaintiff is entitled to Attorneys' Fees under Section 3344 and the Lanham Act, and (2) whether the requested fees are "reasonable."[4] Any agreements between Plaintiff and RSN, PC as to RSN, PC's apportionment of the gross recovery are beside the point.

---

[3] The Subpoena's 38th and 39th RFPs, requesting documentation attesting to RSN PC's experience in litigating claims under the Lanham Act and Section 3344, are also made superfluous by the Motion for Attorney Fees. Newman Decl., Ex. A [ECF No. 207]. The Motion set forth RSN PC's experience and can be supplemented in the Reply. *See* Newman Decl., Ex. H.

[4] Under the 'American Rule,' each party to a lawsuit is generally responsible for its own attorneys' fees unless a statute shifts the fees to a losing party. Both Section 3344 and the Lanham Act allow for fees to be shifted to losing party. *See* Cal. Civ. Code § 3344 ("The prevailing party in any action under this section *shall* be entitled to attorneys' fees and costs"); 15 U.S.C § 1117(a) (attorneys' fees awarded in exceptional circumstances). In order to award attorneys' fees to a party in litigation, the court must be satisfied that both (1) the party is entitled to reasonable fees and (2) that fee award is reasonable. *ANT v. Anthony McPartlin*, No. 09-CV-7672 PSG (RZx), 2010 U.S. Dist. LEXIS 122456, at *5-6 (C.D. Cal. Nov. 2, 2010).
(footnote continued ..>)

The Subpoena's further onerous request for a breakdown of billing records by claim in RFPs 10-33, apart from being a clear attempt to impose an undue burden on RSN, PC, is irrelevant to the issues involved in the Motion for Attorney Fees. In the underlying matter, the claims against Defendants were all intertwined with Defendants' abusive misuse of Plaintiff's likeness and photograph, and Plaintiff's counsel could not and need not apportion fees between the claims.[5] And in any event, as discussed in the subsequent section, the Subpoena's enormous over breadth clearly evidences that its true purpose was to harass Plaintiff and RSN PC.[6]

---

(...footnote continued)
Reasonableness is determined by the 'lodestar' method, where a court considers the work completed by the attorneys and multiplies the number of hours they reasonably expanded on the litigation by the reasonably hourly rate. *Millea v. Metro-North R.R*, 658 F.3d 154, 166 (2d Cir. 2011)). As the United States Supreme Court has repeatedly emphasized, in fee cases such as this, a lodestar-based fee award is "strongly presumed to be reasonable." *Huntington Branch, NAACP v. Huntington*, 961 F.2d 1048, 1050 (2d Cir. 1992) (citing *Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 483 U.S. 711 (1987)).

[5] In the underlying litigation, the Section 3344 and Lanham Act claims are so intertwined that it is impossible for Plaintiff's counsel to differentiate between the work done on these individual claims as well as the other claims (dismissed under Settlement). *Gracie v. Gravie*, 217 F.3d 1069, 1069-70 (9th Cir. 2000) ("an estimated adjustment would be meaningless."). *See also Atkins v. Enterprise Rent-a-Car Co.*, 79 Cal. App. 4th 1127, 1133 (Cal. Ct. Appl. 2000) ("in the Ninth Circuit, state law claims for false advertising are 'substantially congruent' to the Lanham Act and are therefore governed by the same standards"); *American Optometric Society v. American Board of Optometry, Inc.*, No. 11-1881, 2012 U.S. Dist. LEXIS 17129 (C.D. Cal. December 3, 2012) (fee awarded as to both state law and Lanham Act claims because governed by same legal standard, factual theory and intertwined in work done). In *Yeager v. Bowlin*, No. 08-102 WBS JFM, 2010 U.S. Dist. LEXIS 63399, at *25-26 (E.D. Cal. Jun. 3, 2010), plaintiffs asserted violations of both Section 3344 and Lanham Act, all based upon the same alleged misconduct by defendants and related to the same set of facts - namely that defendants allegedly used plaintiff's name and likeliness without permission, and the court ruled that no apportionment of fees among the claims was necessary. *See also Love v. Mail on Sunday*, No. 05-7798 ABC (PJWx), 2007 U.S. Dist. LEXIS 97061, at *10 (C.D. Cal. Sept. 7, 2007) ("'apportionment' of fees among those claims is simply unnecessary"). As a result, Plaintiff's counsel could not and did not apportion time between the claims.

[6] RFP 39, requesting documentation relating to RSN PC's experience litigating under Section 3344, is notably irrelevant as Section 3344's fee shifting provision does not require counsel to demonstrate any experience with litigating under the Section, unlike the Lanham Act.

### 3. The Subpoena's True Purpose is to Harass Plaintiff and RSN PC

A brief review of Defendants' conduct in this litigation, as well as the Subpoena itself, leads to the unmistakable conclusion that the true purpose of the Subpoena is to punitively burden Plaintiff and Plaintiff's counsel with further costs in time and effort. From the inception of this case, Defendants went to extraordinary and unethical lengths to stymie Plaintiff's attempt to protect his likeness. As just a sample of Defendants' conduct, they concealed evidence, made a meritless motion to dismiss which was then withdrawn only after Plaintiff was forced to respond, served over *300* written discovery requests for information that was largely already in Defendants' possession, filed nine motions *in limine* before trial, and planned to assert eleven affirmative defenses at trial. Newman Decl., ¶¶ 17-19.

This unwarranted Shermanesque total war against Plaintiff over claims where Defendants were clearly at fault is beyond the pale, and the Subpoena is simply a continuation of their prior conduct. It is axiomatic that a "request for attorney's fees should not result in a second major litigation." *Bingham v. Zolt*, 66 F.3d 553, 565 (2d Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). With 39 RFPs for documentation that is either irrelevant to the pending Motion for Attorneys' Fees or that Defendants could have easily anticipated would have been provided with such Motion, the Subpoena is merely Defendants' most recent act of litigation overkill that not only oversteps the bounds of zealous advocacy, it tramples it underfoot. And it can be no coincidence that this asymmetrical Subpoena arrived just three days after Plaintiff served Sheppard Mullin a simple one-page subpoena for records that were relevant to the Motion for Attorneys' Fees. Instead the Subpoena is likely an act of retaliation against Plaintiff's reasonable request for information.[7] It is clear that the Subpoena has been "served for the purpose of annoying and harassment and not really for the purpose of getting information," *Mattel*, 353 F.3d at 814, and accordingly it should be quashed as unduly burdensome.

---

[7] It is also worth noting Defendant's chutzpah in issuing the enormous Subpoena while declining to themselves respond to Plaintiff's subpoena in a timely manner.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his motion to quash the Subpoena. If the Court is not willing to quash the Subpoena in its entirety, Plaintiff requests entry of a protective order that addresses and resolves the substantial concerns set forth in this motion.

Dated: New York, New York
January 24, 2013

Respectfully submitted,

RANDALL S. NEWMAN, P.C.

By: *[signature: Randall S. Newman]*

Randall S. Newman, Esq. (RN7862)
37 Wall Street, Penthouse D
New York, New York 10005
Tel: (212) 797-3737

*Attorney for Plaintiff Zack Ward and
Petitioner Randall S. Newman, P.C.*